JOSEPHUS SCOTT

*v.*

WILLIAM T. GILKEY.

*Filed at Springfield October 30, 1894.*

1. PAYMENT—*of note, must be made in money.* Payment of negotiable paper can only be made with money, except with the consent of the holder.

2. SAME—*agent to collect can only accept money.* An agent employed to collect cannot accept anything but money in payment, unless his principal has expressly authorized him to accept something else.

3. SAME—*payment by note through bank, when not good.* A bank, holding notes for collection, accepted other notes of the maker, payable to the bank, for the principal sum, and credited the bank account of the payee therewith, surrendering the notes. No credit was given the account of the payer of the notes as for borrowed money, and no cash passed in the transaction. The bankers absconded, and the owner of the surrendered notes sued the maker: *Held,* no payment, and the owner could recover.

4. SAME—*may be good if made by check.* Such payer at the same time gave his check for the interest on the notes, which the collecting bankers accepted, charging the drawer's account and crediting the account of the owner of the notes correspondingly. It appeared the drawer of the check had sufficient funds on deposit to meet the check: *Held,* a good payment of the interest.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Edgar county; the Hon. F. BOOKWALTER, Judge, presiding.

On the 14th day of January, 1891, appellant purchased of appellee a farm for $20,000. In payment therefor he gave $6700 in cash, and his two notes, payable to the order of appellee, for $6650 each. The notes bore six per cent interest from date, and were payable at Standiford Bros.' bank, Chrisman, Illinois, one on or before March 1, 1892, and the other on or before March 1, 1893. On September 8, 1891, while appellee was temporarily absent in Kentucky, appellant went to the bank of Standiford Bros., where the notes were payable and where they had been left by appellee, and expressed his desire to pay them.

Accordingly he thereupon delivered to the bank his check for $259.25, being the amount of the interest then due on the first of the above notes, and also his two notes payable to the order of Standiford Bros., the one for $5000 and the other for $1650, being the amount of the principal of said first note, requesting the bank to credit appellee's account with the total of those three sums, whereupon the bank surrendered to appellant appellee's first note, stamped paid, etc. On September 14, 1891, appellant delivered to the bank his check for $204.50, and also his note dated September 12, 1891, payable to the order of Standiford Bros., for $6650, representing, respectively, the amount of the interest then due on his second note to appellee and the amount of the principal thereof. The bank was instructed, as before, to credit appellee's account with the amounts represented by the check and the new note. The bank then surrendered to appellant appellee's second note, stamped paid, etc. The notes of September 8 and 12, payable to the order of Standiford Bros., bore five per cent interest from date. Shortly thereafter, on September 26, the Standiford Bros. absconded, taking with them the funds then in the possession of the bank. Appellee, about this time, returned home from his visit to Kentucky, when he first learned that the two notes executed to him by appellant had been surrendered to the latter by the bank. He then demanded of appellant that he return the notes to him, and upon his refusing so to do brought replevin against appellant, but, the officer failing to obtain possession of the notes, a count in trover was filed. The cause was tried before a jury, in the Edgar circuit court, and judgment was rendered in favor of appellee and against appellant for $13,823 and costs, after $40 of the damages assessed by the jury had been remitted by appellee. From that judgment appellant appealed to the Appellate Court, where the judgment of the circuit court was reversed and the cause remanded, with directions that upon a *remittitur* being made by the plaintiff

below of $523.75, judgment be entered in his favor on the verdict for the residue, viz., $13,299.25 and costs, and that in case of a failure to make such *remittitur* within thirty days after the reinstatement of the cause in the court below, the defendant should be awarded a new trial. Appellant now asks that the judgments of the Appellate and circuit courts be reversed.

Mr. ANTHONY THORNTON, Mr. ROBERT L. MCKINLAY, and Mr. J. F. VAN VOORHEES, for the appellant:

He who, without intentional fraud, has enabled another to do an act which must be injurious to himself or another innocent party, shall himself suffer the injury rather than such innocent party. *Garvin* v. *Wiswell*, 83 Ill. 219; *Noble* v. *Nugent*, 89 id. 524; Story on Agency, sec. 127.

When the money was credited to appellee it became a general deposit, on which he could draw. The money was mingled with the funds of the bankers, and they had entire control of it, subject to the check of the creditor. Thus the relation of debtor and creditor arose between the bank and appellee. *Brahm* v. *Adkins*, 77 Ill. 264; *Bank* v. *Rushmore*, 28 id. 470.

We insist, if the equivalent of money is given it is sufficient to constitute payment, and that we must look at the intention of the parties. *Ralston* v. *Wood*, 15 Ill. 171; *Trumbull* v. *Nicholson*, 27 id. 151.

Payment is not a technical term, importing the delivery of money. It is a question of fact, of the meaning and intention of the parties. *Ryan* v. *Dunlap*, 17 Ill. 43; *Archibald* v. *Argall*, 53 id. 309.

Every circumstance proven shows that the parties intended payment. The mere entry in the books of the bank of the amount and date of the deposit is *prima facie* evidence that the bank received the money. 2 Am. & Eng. Ency. of Law, 102.

The courts will take judicial notice of the system by which banks transact their monetary affairs. *British, etc. Co.* v. *Tibballs*, 63 Iowa, 468; *Bank* v. *Hall*, 83 N. Y. 338.

The entries and the notes implied a loan of money. Byles on Bills, (4th Am. ed.) 508 ; 2 Greenleaf on Evidence, sec. 112 ; *Johnson* v. *County of Stark*, 24 Ill. 93.

Even in case of a deposit, an oral order is sufficient authority to a banker for the transfer of money.    *Watts* v. *Christie*, 11 Beav. 551; *McEwen* v. *Davis*, 39 Ind. 111.

Mr. HENRY VAN SELLAR, Mr. H. S. TANNER, and Mr. F. W. DUNDAS, for the appellee :

A bank at which notes are made payable, but with which they have not been deposited for collection, though they are in its manual possession, is not the agent of the holder to receive payment.    *Chenny* v. *Libby*, 134 U. S. 68.

When a note is unindorsed by the payee, the person to whom it is presented for payment is put upon his inquiry, and payment is made at his risk, if not made to the true owner.    Norton on Bills and Notes, 258.

If the note is made to order, the maker must pay to the proper person.    Possession, in that instance, is not presumptive evidence of ownership.    Tiedeman on Com. Paper, sec. 374.

Unless the bank has been made the agent of the holder by the endorsement of the paper or the deposit of it for collection, any money which the banker receives to apply in payment of it will be taken as the agent of the payer. 3 Randolf on Com. Paper, 108, and notes.

Mere possession of an unindorsed note by an assumed agent is not sufficient authority to authorize payment to him.    *Doubleday* v. *Kress*, 50 N. Y. (5 Sickles,) 413.

Presentment for payment must be made by the holder of the bill or note, or by an agent competent to give a legal receipt for the money.    Chitty on Bills, chap. 9, sec. 2.

If a debtor pays the debt by giving his note payable to the agent, which note the agent sells before maturity, and the maker pays, this does not prevent recovery by the principal.    Am. & Eng. Ency. of Law, notes on p. 194;

*Lochenmeyer* v. *Fogarty*, 112 Ill. 572; *Harbach* v. *Colvin*, 73 Iowa, 638; *British, etc. Co.* v. *Tibbals*, 63 id. 468, and authorities cited.

Mr. Justice Baker delivered the opinion of the court:

We will assume, for the purposes of this appeal, that the banking house of Standiford Bros. had authority from appellee to collect the two promissory notes in controversy. The bank, then, having been authorized by appellee to collect the notes, the question arises, did it transcend its authority in the manner of accepting payment,—in other words, were the notes in fact paid.

It is the well settled rule in regard to negotiable paper, that payment can only be made with money, except with the consent of the holder, and that an agent to collect cannot accept anything but money in payment, unless he has been expressly authorized by his principal to receive something else. *Lochenmeyer* v. *Fogarty*, 112 Ill. 572; *Padfield* v. *Green*, 85 id. 529; *Nolan* v. *Jackson*, 16 id. 272; Tiedeman on Com. Paper, sec. 375, and authorities there cited; 18 Am. & Eng. Ency. of Law, 194, and authorities cited in note 1. There is here no claim that appellee consented that the notes should be paid otherwise than in money, or that he authorized the bank to accept in his behalf anything but money in payment of them. Did the bank receive from appellant money in discharge of the notes? If so, they were properly paid. It is not claimed that any money actually changed hands, but appellant's contention is, that he borrowed from the bank the money to pay the notes, and had the amounts due on them credited by the bank upon appellee's account out of the funds so borrowed.

The record discloses these facts: That on September 8, 1891, appellant delivered to the bank his check for $259.25, which was the amount of the interest due and unpaid on the first of the notes here in controversy, and also delivered to it his two notes, for $1650 and $5000,

respectively, these two notes together making the amount of the principal of the aforesaid note. The new notes drew five per cent interest from their date, and were made payable to the order of Standiford Bros. The bank thereupon surrendered to appellant, stamped paid, the first of the aforesaid notes which had been placed in its hands for collection by appellee. On September 14, 1891, appellant delivered to the bank his check for $264.50, which was the amount of the interest due and unpaid on the second of the last mentioned notes, and also delivered to it his note dated September 12, 1891, for $6650, which was the amount of the principal of that note. The new note drew five per cent interest from its date, and was made payable to the order of Standiford Bros. The bank thereupon surrendered to appellant, stamped paid, the second of the notes belonging to appellee. The books of the bank, which were offered in evidence, showed the receipt, on September 8, 1891, of appellant's notes for $5000 and $1650, respectively, but no credit to him as for money, and showed the charge to him of the check for $259.25. Appellee's account, in the ledger, showed a credit to him of that date of $6909.25. The books showed also the receipt, on September 14, 1891, of appellant's note of the 12th for $6650, but no credit to him for money, and also showed the charge to him of the check for $264.50. In appellee's account, on the ledger, there appeared a credit to him on the 14th of $6914.50. The journal, which contained the original entry of this item of credit, showed it as follows: "September 14, Monday.—W. T. Gilkey, by Josephus Scott, note and interest, $6914.50." The journal statement of the credit of September 8 was as follows: "September 8, Tuesday, '91.—W. T. Gilkey, $6909.25." The books thus showed that appellant was not credited therein with the money he claims to have borrowed of the bank, and with which he claims to have taken up the notes in controversy.

The contention of appellant that the alleged payment of the said notes was made with money borrowed of the bank is in direct conflict with the entries in the bank books, and is not even supported by his own testimony, when it is considered as a whole.    Appellant attempted to make payment of the notes payable to appellee by giving to Standiford Bros., the bankers, his notes payable to them. It follows, therefore, that the principal of the notes which are the subject of this suit has not been paid.    See authorities cited *supra*.

With reference, however, to the interest on those notes, we take a different view, and are of the opinion that appellant's checks for $259.25 and $264.50, respectively, dated September 8, 1891, and September 12, 1891, constituted a valid payment of the interest due at those dates. According to appellant's testimony he had on deposit in the bank, at the time he delivered the checks to it, sufficient money to pay them, and there is nothing in the record to show that this was not the fact.    The amounts of the checks were charged against him and credited to appellee on the books of the bank.

Appellant further contends that the trial court erred in giving the fourth instruction for appellee, and in refusing to give the second, seventh, twelfth and thirteenth instructions asked in his own behalf, and urges that therefore the judgments of the courts below ought to be reversed.    The trial court undoubtedly erred, as thus contended, but, in the light of what we have already said, we do not think the errors in question could have materially prejudiced the rights of appellant, or that we would be justified in reversing the judgments of the trial and Appellate Courts on account of those errors.

We are of opinion that the judgment of the circuit court, as modified by the judgment of the Appellate Court, was right, and since we find no harmful error in the record, the judgment of the Appellate Court is therefore affirmed.          *Judgment affirmed.*