Farmer v. Wallin.

---

JAMES H. FARMER, Respondent, v. J. P. WALLIN, et al., Appellants.

In the Springfield Court of Appeals, December 6, 1922.

1. **PRINCIPAL AND AGENT: Evidence Sufficient to Sustain Finding that Bank Acted as Agent for Defendant in Collecting Note.** Where a bank acted for defendant in loaning his money to plaintiff on plaintiff's note and trust deed, and the bank collected the annual interest, as well as the final payment, on the note, which, with the trust deed, defendant sent to the bank for collection, *held* evidence sufficient to sustain finding that the bank was defendant's agent, though defendant at the time he sent the note and trust deed to the bank for collection instructed the bank to "collect charges" from plaintiff.

2. **MORTGAGES: Evidence Held to Support Finding Plaintiff Paid Note Due Defendant in Bank for Collection.** Evidence that plaintiff, in order to pay two notes held by a bank for collection, one of which was owing to defendant, and secured by trust deed, totaling $921, borrowed $1000 from a third party, paid the bank $921, and the latter returned the trust deed to plaintiff, marked the note paid, but retained it to satisfy the trust deed of record, and entered a credit of the balance of $79 to plaintiff's deposit, *held* to support finding that plaintiff paid defendant's note.

3. **APPEAL AND ERROR:** Appellate Court not Bound by Finding of Trial Court in Equity Cases. The appellate court is not bound in an equity case by the trial court's finding, yet due deference is given thereto.

Appeal from Circuit Court of Howell County.—*Hon. E. P. Dorris,* Judge.

AFFIRMED.

*Humphries, Burroughs & Van Wormer* for appellant.

(1) If the debtor or the payer leaves money in the bank to pay his obligation, or being a depositor specially directs the bank to pay such obligations, the bank becomes his agent and is responsible to him for the safe keeping and proper application of the money. 7 C. J. 606; U. S. Ward v. Smith, 7 Wall. 447, 19 L. Ed. 207; Scott v. Gilkey, 153 Ill. 168, 39 N. E. 265; Wheeling Exchange Bk. v. Sutton Bank, 78 Md. 577, 28 A. 563; St. Paul Nat'l Bank v. Cannon, 46 Minn. 99, 48 N. W. 526; Adams v. Hackensack Impr. Comm., 44 N. J. L. 638; Arriall v. Bingham, 55 Hun, 553, 9 N. Y. S. 68; Baldwin's Bank v. Smith, 136 N. Y. S. 349; Fayles v. Cox, 95 Tenn. 579, 32 S. W. 626. (2) A bank which is directed by the makers to pay a note has been held to be the agent of the makers rather than the agent of the owners for collection. 7 C. J. 599; Baldwin's Bk. v. Smith, 136 N. Y. S. 349, Aff. 155 App. Div. 139 N. Y. S. 1115 Mem. (3) It is elementary doctrine that an agent authorized merely to collect a demand or to receive payment of a debt cannot bind his principal by any agreement short of an actual collection and receipt of the money. Wood v. Evans, 2 Ld. Raym. 928; Ward v. Smith, 7 Wall. 451; Pitkin v. Harris, 69 Mich. 133, 37 N. W. 61; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726; State Bank v. Byrne, 56 N. W. 355; Midland Nat'l Bank v. Brightwell, 148 Mo. 358; Bank v. Bank, 151

Mo. 320; Peoples' Bank v. Presnell, 236 S. W. 401, 5
Cyc. 506; Sutton v. Libby, 201 S. W. 615; Armstrong v.
First Nat'l Bank, 195 S. W. 562; Peoples Bank v.
Stewart, 136 Mo. App. 24 l. c. 34, 117 S. W. 99; Same
case, 152 Mo. App. 314, l. c. 329 & 330, 133 S. W. 70;
Reinhart Grocery Co. v. Knuckles, 172 Mo. App. 627,
155 S. W. 1105; Burkwalter v. Crane, 55 Mo. 71; Wheeler
v. Gian, 65 Mo. 89; Rinehart Gro. Co. v. Powell, 158
Mo. App. 458, 18 S. W. 909, 31 Cyc. 1375; Miller v.
Peoples' Savings Bank, 193 Mo. App. —, 186 S. W.
547; Kelly v. Gay, 55 Mo. App. 42.   (4)   An agent au-
thorized merely to collect an account has no implied
authority to accept in payment a note or anything other
than cash, and his principal will not be bound by such
an act, unless the latter, with full knowledge of the facts
ratifies it.   Reinhart Gro. Co. v. Knuckles, 172 Mo. App.
627, 155 S. W. 1105; Buckwalter v. Craig, 55 Mo. 71;
Wheeler v. Gwan, 65 Mo. 89; Rinehart Gro. Co. v. Powell,
158 Mo. App. 458, 138 S. W. 909, 31 Cyc. 1375; Miller
v. Peoples' Savings Bank, 193 Mo. App. 186, — S. W.
347; Kelly v. Gay, — Mo. App. 42.   (5)   A plea of pay-
ment is held in law to mean payment in money and if
payment is other than by money, or if it rests on an
independent agreement, the substantive facts of the
agreement must be pleaded and cannot be shown under
a general denial or a simple plea of payment.   Peoples'
Bank v. Stewart, 136 Mo. App. 24, l. c. 329, 330, 133
S. W. 70; First Nat'l Bank v. Hahan, 197 Mo. App.
600; Armstrong v. First Nat'l Bank, 195 S. W. 562.   (6)
The burden of proving payment is on the party alleg-
ing it.   Berrell v. Kern, 121 S. W. 774, 141 Mo. App.
5; Stiltemeier v. Barrett, 122 S. W. 1095, 145 Mo. App.
54; Union Biscuit Co. v. Springfield Grocer Co., 126 S.
W. 996, 143 Mo. App. 300; West Pub. Co. v. Corbit, 145
S. W. 868, 165 Mo. App. 7; Harrison v. Doyle, 147 S.
W. 504, 163 Mo. App. 602; Loken v. Miller, 9 N. D.
512, 84 N. W. 368.

*M. E. Morrow* for respondent.

(1) Direct evidence is not required to prove an agency. It may be established by circumstances and conduct of parties, and relations previously existing between them. Hull v. Jones, 69 Mo. 587; Mitchum v. Dunlay, 98 Mo. 418; Werth v. Ollis, 61 Mo. App. 401; New Albany W. Mills v. Meyer, 43 Mo. App. 124. (2) A note payable at a particular bank that negotiated the loan and has the note in its possession at maturity and receives payment from maker, the latter is discharged, even tho the bank afterwards fails and does not remit proceeds to holder. Baldwin Bank v. Smith, 109 N. E. 138; Nineteenth Ward Bank v. Bank, 67 N. E. 670; Jolly v. Huebler, 132 Mo. App. 675. (3) The rights of third parties dealing with an agent are controlled by the agent's apparent authority, and not simply by his actual authority expressly given him by his principal. Sharp v. Knox, 48 Mo. App., 169; McLachlin v. Barker, 64 Mo. App. 511; McNichols v. Nelson, 45 Mo. App. 446; Bank v. Mutual Benefit Life Insurance Co., 145 Mo. 127. (4) The rule is settled that a debtor is authorized to infer that an agent employed to negotiate a loan is empowered to receive both principal and interest from his having possession of the securities, especially if allowed to collect interest, he will be presumed to be authorized to collect the principal. Jolly v. Huebler, 132 Mo. App. 675; Whelan v. Reilly, 61 Mo. 565; Dawson v. Wombles, 111 Mo. App. 532; Johnson v. Hurley, 115 Mo. 513; Bank v. Mutual Benefit Life Insurance Co., 145 Mo. 138; Mechem on Agency, sec. 84; Meyer v. Hebner, 96 Ill. 400; Baker v. Elstner, 24 La. Ann. 464; Doyle v. Corey, 170 Mass. 337, 49 N. E. 651; Donaldson v. Wilson, 44 N. W. 429; McMahon v. Bank, 111 Minn. 313; Berkley v. Stewart, 143 N. W. 920; Lawson v. Carson, 50 N. J. Eq. 370; Central Trust Co. v. Folsom, 60 N. E. 599; Corbett v. Waller, 67 P. 567. (5) Payment to a third party with consent of the holder of a note is sufficient

payment; especially if same has been placed with such third party for collection. Groves v. Brown, 11 Mass. 334; Cooper v. King, 64 S. E. 288. (6) Payment to proper officer of a bank at which the note is made payable, when such officer has possession of the note is binding on the holder and discharges the maker. Ward v. Smith, 7 Wall. 447; Scott v. Gilkey, 39 N. E. 265; Lozier v. Horan, 55 Iowa, 75; Ingalls v. Fiske, 34 Me. 232; Osborne v. Baird, 45 Wis. 189.

BRADLEY, J.—Plaintiff filed his bill in equity against J. P. Wallin and J. P. Aldridge praying for an injunction to enjoin the sale of certain land under a deed of trust. On trial the temporary writ was made perpetual, and defendants appealed.

Defendant Aldridge was the sheriff and is not concerned except as acting trustee. The controversy is between plaintiff and defendant Wallin. When using the word defendant hereinafter we have reference to defendant Wallin, who resided at New Windsor, Illinois. In November, 1913, defendant placed $300 with the Citizens Bank of Pomona in Howell county for the purpose of loaning said money. On November 25, 1913, the bank, acting for defendant, loaned the three hundred dollars to plaintiff and his wife, taking their note payable to defendant, and due in five years, with interest at six per cent. payable annually at Citizens Bank of Pomona. The note was secured by a trust deed on plaintiff's land. Plaintiff paid the interest annually at said bank, and the bank remitted to defendant. On October 18, 1920, plaintiff attempted to pay off this note. The transaction was with the Citizens Bank of Pomona, and the question is: For whom was the bank acting?

One Lewis was cashier when the $300 was loaned for plaintiff, but later one A. L. Babb was cashier, and was such during the transactions of importance here. Annually plaintiff paid the interest on this note at the Citizens Bank, and these interest payments were cred-

ited on the note. Plaintiff owed another note of about $600, mentioned in the record as the Woods note. Babb, it seems, represented plaitniff in borrowing $1000 from a Mrs. Bruner. Plaintiff purposed to pay the Wallin and Woods notes out of the proceeds of the Bruner loan. On September 27, 1920, Babb wrote defendant as follows:

"THE CITIZENS BANK OF POMONA
Capital Stock $10,000
Pomona, Mo., Sept. 27, 1920.

Mr. J. P. Wallin,
New Windsor, Ill.

Dear Sir: Please send the J. H. Farmer note and trust deed given to you to us, and the same will be paid, as he wishes to pay this off. Please send all papers connected therewith. Yours very truly, (Signed)· A. L. Babb, Cashier."

In reply defendant caused to be sent the note and trust deed to the Citizens Bank with the following letter:

"BANK OF WINDSOR
C. C. CRAIG, BANKER.
New Windsor, Ill. September 30, 1920.

The Citizens Bank of Pomona,
Pomona, Mo.

Gentlemen: We are mailing you note executed by Jas. H. Farmer and Emma Farmer in favor of J. P. Wallin together with trust deed securing said note. Mr. Wallin states that it is by your instruction that he asks to have these papers mailed to you as payment of this note is to be made. When payment of this note is made to you, you may deliver trust deed to Mr. Farmer, and remit proceeds to us for Mr. Wallin. Please collect your charges in this matter from Mr. Farmer as it is to his convenience that these papers are mailed to you. Thanking you for your attention to this matter, we are, Yours truly, (Signed) H. G. Peterson, Cashier."

On October 15, 1920, the cashier of the Bank of New Windsor wrote again as follows:

25—211 M. A.

"The Citizens Bank of Pomona,
Pomona, Mo.

Gentlemen: On September 30, we mailed you for collection note and mortgage executed by Jas. H. Farmer and Emma Farmer in favor of J. P. Wallin. It was for the convenience of Mr. Farmer that these papers were sent to you as Mr. Wallin understood that same was to be paid at once. Please advise fate of these papers and if unable to collect please return papers. Thanking your for your attention to this matter, we are, Yours truly, (Signed) H. G. Peterson, Cashier."

Babb returned this letter with pencil notation on bottom as follows: "Party arranging loan. As soon as complete will send money with interest in full. Had a hitch in his loan or would have had his money by this time. (Signed) Citizens Bank, A. L. Babb, Cashier."

The Bruner money being then available, plaintiff on October 18, 1920, paid to the Citizens Bank $921 to take up the Wallin and Woods notes, and received a deposit of $79, the balance of the $1000 from the Bruner loan. The Woods note and the Wallin trust deed were at the time turned over to plaintiff, and the Wallin note was marked "paid," but Babb retained the Wallin note to satisfy the record. Babb did not remit nor report the collection to Wallin nor to the Bank of New Windsor. He made no record of the collection of the Wallin note. Not having heard from Babb the cashier of the Bank of New Windsor on December 27, 1920, wrote as follows:
"Bank of Pomona,
Pomona, Mo.

Gentlemen: Mr. J. P. Wallin called at our bank today and asked us to write in regard to the matter we mailed you some time ago. Mr. Wallin requests that you return all the papers sent you if cannot make the collection. We feel you have done all you can to get this deal through, but Mr. Wallin does not feel that he can let the matter stand as it is, and therefore asks that his papers be returned. Thanking you for your trouble, we are, Yours truly, (Signed) H. G. Peterson, Cashier."

In April, 1921, Babb's house came down upon him, and he fled the country, and the State Banking Department took charge of the bank. No one could or did find the Wallin note during Babb's absence. He returned, however, and found the note in the bank.

For whom was the Citizens Bank acting? The answer to this question solves the problem here. The learned chancellor below found that the bank was acting for and was the agent of the defendant. The court in its decree found the facts as follows: "The court doth find that on the 25th day of November, 1913, the Citizens Bank of Pomona, Missouri, by and through its then cashier, A. T. Lewis, was agent for defendant J. P. Wallin in loaning the sum of $300 for said defendant to the plaintiff, and on said date plaintiff Jas. H. Farmer and Emma Farmer, his wife, executed their promissory note for the said $300 to defendant Wallin, payable at said Citizens Bank of Pomona, together with their deed of trust to secure its payment upon the following described lands in Howell county, Missouri. (Here follows description.) That plaintiff delivered said note and deed of trust to said bank as agent for defendant Wallin upon execution of same. The court doth further find from the evidence that the plaintiff has fully paid off and discharged said note by payment of same at and to said bank, and that said note was then marked 'paid,' and afterwards returned to plaintiff; and that plaintiff is entitled to have said deed of trust cancelled and released of record."

We agree with the court below. We have reached the conclusion that from this record it clearly appears that defendant by his acts constituted the Citizens Bank, represented by Babb as its cashier, as his agent. Babb, as cashier, had no doubt in the past been acting as defendant's agent in collecting the interest. Plaintiff did not direct Babb to write defendant to send the note and trust deed to the Citizens Bank. Babb knew, of course, for what purpose plaintiff was securing the Bruner loan.

When that money was about available Babb of his own accord, so far as appears, wrote defendant to send the note and trust deed. Such was the import of the letter of September 27, 1920. In the reply to the letter of September 27th the cashier of the Bank of New Windsor, acting for defendant, advised the Citizens Bank to receive payment and "deliver trust deed to Mr. Farmer and remit proceeds to us for Mr. Wallin." In this letter the cashier requested that the Citizens Bank collect its charges from Farmer because the papers were mailed for Farmer's convenience. Defendant lays some stress on this fact, contending that the Citizens Bank, acting through Babb, was plaintiff's agent. Also some importance is sought to be given to the fact that the note was not ordered to be delivered. We do not think that these two facts or circumstances are of much significance. The note and trust were sent to Babb as the cashier. Defendant, ignorant of Babb's defalcations, was using the Citizens Bank of Pomona as an agency to collect his note. If the bank or Babb, as cashier, had authority to collect and did collect the Wallin note, then, of course, both the note and trust deed should have been delivered on payment of the note. There is no dispute that the trust deed was delivered and the note marked "paid." Plaintiff gives a reasonable explanation as to why the note was not delivered. There is no significance in the fact that defendant wanted plaintiff to pay the charges, especially in view of the other facts and circumstances. Also it will be noted that the Citizens Bank was not told that it would have to look to plaintiff for its charges. A request was merely made to collect the charges from plaintiff. Such is not unusual. The letters on October 15th and December 27th strengthen rather than weaken the contention that the Citizens Bank of Pomona, through Babb, was acting for defendant.

Defendant makes the point that there is no evidence that plaintiff *paid* the amount of the note to Babb, as

cashier. There is evidence that plaintiff got a $1000 loan from Mrs. Bruner; that when the amount of the Woods note and defendant's note was deducted there was a balance of $79, for which plaintiff received a deposit. It was not shown, it is true, that plaintiff received a deposit entry for the $1000, and that he checked on it to pay the two notes. The transaction might, and perhaps should, have been shown by the bank records, and perhaps would have been had not Babb been at that time engaged in an effort to cover up his tracks. There were bits of evidence here and there when disconnected which lend support to defendant's case, but from the whole record we are convinced that defendant by his acts made the Citizens Bank of Pomona his agent for the collection of the note. It seems clear under the record here that on the theory of agency alone defendant could sue and recover from the bank the proceeds of this note. The bank was wrecked by Babb, and as between the two innocent persons, plaintiff and defendant, the evidence tends more strongly to support plaintiff's case than that of defendant. The trial court found for plaintiff and while we are not bound in an equity case by the trial court's finding of facts, yet we do give due deference thereto.

Defendant cites Fair v. Bowen et al. (Mich.), 86 N. W. 991, as sustaining his contention that under the facts the bank was the agent of plaintiff. The Fair Case is similar in some respects to the case at bar. There is, however, a vital distinction in the evidence relative to the question of agency. In that case John D. Bowen executed a mortgage on certain land to Fair, and then conveyed to Arthur D. Bowen. One Hale, at the special instance of the Bowens, wrote Fair's agent to procure from Fair a release on eighty acres, and that he, Hale, could collect $400 and the interest on the $400 as Bowen had a chance to sell the eighty acres. After some correspondence Fair sent the release to Hale, who collected $500 and interest and delivered the release,

but embezzled the money. It further appears that after the Bowens knew that Hale had not remitted, and after receiving letters from Fair, they continued to pay interest upon the full amount, and concealed Hale's embezzlement, and that this was at the request of Hale, "who urged that if complainants were notified of the situation they would make him trouble." We do not regard the Fair Case as an authority in support of defendant's contention. Defendant says that McMullins v. Peoples Savings & Loan Ass'n (Minn.) 58 N. W. 820, is in point and supports his contention. The facts of that case distinguish it from the one at bar. Unquestionably the conclusion there reached was correct, but the facts are quite dissimilar to those here.

We are of the opinion that the judgment below should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.